## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Torqued Up Energy Services, Inc., | ) | Case No. 15-60796-11 |
| | ) | |
| Arctic Acquisition Corporation, d/b/a Cougar Pressure Control, and | ) | Case No. 15-60798-11 |
| | ) | |
| Torqued-Up Enterprises, LLC, | ) | Case No. 15-60799-11 |
| | ) | |
| Debtors. | ) | |

## INTERIM ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 507, BANKRUPTCY RULES 2002, 4001, AND 9014; (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"), for entry of an interim cash collateral order, and this Court having conducted a preliminary hearing on the Motion (the "Preliminary Hearing"), and the Court, having considered the pleadings, the evidence adduced by the parties, and the representations of counsel, and upon the entire record made at the Preliminary Hearing, the Court finds that good and sufficient cause appears for the granting of the Motion and that all objections to the entry of this Order have been withdrawn or are overruled. Accordingly, this Court hereby (i) grants the relief requested in the Motion to prevent immediate and irreparable harm to the Debtors' estates and to facilitate the reorganization of the Debtors' business and (ii) finds and orders as follows:

A.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 1334 and 157. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (K), (M), and (O).

B.       Sufficient and adequate notice of the Motion and the hearing thereon was provided pursuant to Bankruptcy Rules 2002, 4001(b), 9006, and 9014, and as required by Sections 361 and 363 of the Bankruptcy Code. Except as provided herein with respect to notice of the Final Hearing and Final Order, no further notice of, or hearing on, the relief sought in the Motion is necessary or required.

C.       On November 20, 2015, (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

D.       The Debtors are continuing in possession of their property and are operating and managing their business as Debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

E.       Torqued Up Energy Services, Inc., as borrower, Amegy Bank National Association, as, among other things, administrative agent (in such capacity, "Administrative Agent"), and certain financial institutions as lenders (the "Lenders") are parties to that certain Credit Agreement dated as of March 30, 2011 (as amended, restated, or otherwise modified from time to time, the "Credit Agreement").  Additionally,  Torqued Up Energy Services, Inc, as borrower, and Arctic Acquisition Corp. and Torqued-Up Enterprises, LLC, as guarantors, and the Administrative Agent are parties to that certain Guaranty Agreement dated as of March 30, 2011 (the "Guaranty Agreement," and together with the Credit Agreement, and all other mortgage, security and pledge agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented, or otherwise modified, the "Loan Documents").  The Debtors and the Lenders assert that under the Guaranty Agreement the Debtors have granted a first priority lien and security interest in, to and against substantially all

of their assets (the "Prepetition Collateral") as set forth in the Loan Documents to the

Administrative Agent and Lenders.  Pursuant to the Loan Documents, the Debtors and the

Lenders assert that the Debtors are indebted and liable to the Administrative Agent and Lenders

for all loans and other obligations described therein and payable thereunder (the "First Lien

Indebtedness").

F.    Without prejudice to the rights of any other party-in-interest in this Chapter 11

Case (but subject to the limitations with respect to such rights contained in paragraph 17 of this

Order), and after review by their counsel as to each of the matters referred to below, the Debtors

acknowledge, admit, and agree that:

a.    In accordance with the terms of the Credit Agreement, all amounts payable thereunder are now fully due and payable by the Debtors.  The Debtors are indebted and liable to the Administrative Agent and the Lenders for such amounts without defense, counterclaim or offset of any kind.

b.    The Debtors acknowledge and admit that, as of the Petition Date, the Debtors were indebted and liable to the Administrative Agent and the Lenders for all of the First Lien Indebtedness, including without limitation, Loans (as defined in the Credit Agreement) made by the Lenders in the aggregate principal amount of not less than $12,261,882.30 under the Credit Agreement plus accrued and unpaid interest at the applicable default rate, indemnification obligations, and fees and expenses (including, without limitation, the reasonable fees and expenses of the Administrative Agent's and Lenders' attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Loan Documents, and the Debtors are unaware of any defense, counterclaim or offset of any kind related to such indebtedness.

c.    Pursuant to the Loan Documents, to the best of the Debtors' knowledge, the First Lien Indebtedness is secured by valid, perfected, enforceable, non-avoidable, first priority liens and security interests in, to and against the Prepetition Collateral, and there exists no basis upon which the Debtors can properly challenge or avoid the validity, enforceability, priority or perfection of the First Lien Indebtedness or the liens and security interests held by the Administrative Agent and the Lenders in, to or against the Prepetition Collateral.

G.     The preservation, maintenance and enhancement of the value of the Debtors' assets are of the utmost significance and importance.  However, the Debtors lack sufficient available sources of working capital and financing to carry on the operation of their business without the use of Cash Collateral (defined below).  Moreover, the Debtors' need to use Cash Collateral is immediate; absent the ability to use Cash Collateral, the continued operation of the Debtors' business would not be possible and serious and irreparable harm to the Debtors and their estates would be inevitable.

H.     The Debtors continue to collect cash, rents, income, offspring, products, proceeds and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitute Prepetition Collateral under the Loan Documents and are, accordingly, subject to the Administrative Agent's and Lenders' valid and perfected security interests.

I.     The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds and profits in their business operations which constitute Cash Collateral of the Administrative Agent and the Lenders under Section § 363(a) of the Bankruptcy Code (the "Cash Collateral").  Certain prepetition rents, income, offspring, products, proceeds and profits, in existence as of the Petition Date, including balances of funds in the Debtors' prepetition and post-petition operating bank accounts, constitute Cash Collateral as well.

J.     The Administrative Agent and the Lenders have consented to the Debtors' use of their Cash Collateral exclusively on and subject to the terms and conditions set forth herein and for the limited duration of this Order.

K.     The Preliminary Hearing was held pursuant to Bankruptcy Rules 4001(b)(2). Notice of the Preliminary Hearing and the relief requested in the Motion was given to (i) the

Office of the United States Trustee, (ii) the Administrative Agent and its counsel, (iii) each of the

Lenders and their counsel, and (iv) the creditors holding the 20 largest unsecured claims against

the Debtors on a consolidated basis.[1]

L.      Based on the record before this Court, it appears (and the Debtors and the

Administrative Agent stipulate) that the terms of this Order, including, without limitation, as to

the Debtors' use of Cash Collateral and the provision of adequate protection therefor, are fair and

reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their

fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy

Rules 4001(b)(2).  The permission granted herein to use Cash Collateral (and provide adequate

protection therefore) is necessary to avoid immediate and irreparable harm to the Debtors.  This

Court concludes that entry of this Order is in the best interests of the Debtors' estates and

creditors as its implementation will, among other things, allow for the flow of supplies and

services to the Debtors necessary to sustain the operation of the Debtors' existing business and

enhance the Debtors' prospects for a successful reorganization.

N.      Based upon the foregoing findings, stipulations and conclusions, and upon the

record made before this Court at the Preliminary Hearing, and good and sufficient cause

appearing therefore;

---

[1] No official committee of unsecured creditors (the "Committee") has been appointed at this time in the
Chapter 11 Case.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ON AN INTERIM BASIS, AS FOLLOWS:**

1.      <u>Motion</u>. The Motion is granted, subject to the terms and conditions set forth in this Order. The Debtors shall not use any Cash Collateral except as expressly authorized and permitted herein or by subsequent order of the Court.

2.      <u>Use of Cash Collateral</u>.   The Debtors are hereby authorized to use the Cash Collateral in accordance with the Interim Budget (as defined below) during the period from the Petition Date through and including the Termination Date (as defined below) for (i) working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in this Chapter 11 case, subject to the terms hereof; and (ii) adequate protection payments to the Administrative Agent and the Lenders, as provided herein.

3.      <u>Budget; Use of Collateral Proceeds.</u>   The Debtors are authorized, on an interim basis, to use Cash Collateral solely to pay expenses of the estate described in the budget attached hereto as **<u>Exhibit A</u>** (the "<u>Interim Budget</u>"), from the Petition Date to the date of the Final Hearing solely up to the amounts, at the times and for the purposes identified in the Interim Budget.   The Debtors shall not, without the prior written consent of the Lenders, use Cash Collateral with respect to any single week in the Budget in an amount in excess of the aggregate amount budgeted for that week, provided however, that there shall be a permitted a variance of 10% in the aggregate for any amounts listed in the Budget for a particular week; provided, however, that for exceptional, unanticipated expenditures that are not contemplated by the Budget, the Debtors and the Administrative Agent may agree that such expenditures, if approved, are not credited against the permitted aggregate variance.   Any amounts listed in the Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week and any unused amounts may be utilized for any other line item within the

week or a subsequent week or weeks.  Notwithstanding anything in the Interim Budget or this

Order to the contrary, the Administrative Agent reserves all rights to object to any motion,

application, or other request for relief that relates to the items referred to or covered by the

Budget.

4.     Entitlement to Adequate Protection.  The Administrative Agent and the Lenders

are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2) and 363(e), to adequate

protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an

amount equal to the aggregate post-petition diminution in value of the Prepetition Collateral,

including without limitation, any such diminution resulting from the sale, lease or use by the

Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the

automatic stay pursuant to Bankruptcy Code section 362 (such diminution in value, an

"Adequate Protection Obligation").

5.     Adequate Protection.  As adequate protection, the Administrative Agent and the

Lenders are hereby granted the following claims, liens, rights and benefits:

> a.     Section 507(b) Claim.  The Adequate Protection Obligations due to the
> Administrative Agent and the Lenders shall constitute a super priority
> claim against the Debtors as provided in Bankruptcy Code section 507(b),
> with priority in payment over any and all unsecured claims and
> administrative expense claims against the Debtors, now existing or
> hereafter arising, of the kinds specified or ordered pursuant to any
> provision of the Bankruptcy Code, including without limitation, sections
> 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final
> Order), 507(a), 507(b), 726, 1113 or 1114, and shall at all times be senior
> to the rights of the Debtors, and any successor trustee or any creditor, in
> the Chapter 11 Case or any subsequent proceeding, including without
> limitation a Chapter 7 proceeding, under the Bankruptcy Code (the "First
> Lien 507(b) Claim"), subject and subordinate only to the Carve Out (as
> defined in paragraph 6 below).

> b.     Adequate Protection Liens.  As security for the Adequate Protection
> Obligations, effective as of the Petition Date and perfected without the
> necessity of the execution by the Debtors (or recordation or other filing) of
> security agreements, control agreements, pledge agreements, financing

statements, mortgages or other similar documents, or the possession or control by the Administrative Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Administrative Agent for the benefit of the Lenders (all property identified in clauses (i), (ii), (iii) and (iv) below being collectively referred to as the "Adequate Protection Collateral"), subject only to the Carve Out (as defined in paragraph 6 below) (all such liens and security interests, the "Adequate Protection Liens"):

(i)   First Priority on Unencumbered Property.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority lien and/or replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible assets, including without limitation, all prepetition and postpetition assets of the Debtors' estate, including all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b) (collectively, the "Unencumbered Property"), including without limitation, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, swap and hedge proceeds and termination payments, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under Bankruptcy Code section 549), commercial tort claims, and the proceeds of all of the foregoing, provided that the Unencumbered Property shall not include the avoidance actions under chapter 5 of the Bankruptcy Code (with the exception of actions arising under Section 549 which are included herein);

(ii)   Liens Junior to Certain Existing Liens. Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all of Debtors' tangible and intangible assets, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (i) or (iii) of this paragraph 5(b)), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding

as of the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b), which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Administrative Agent and Lenders (the "Other Senior Liens");

(iii)    <u>Liens Senior to Certain Existing Liens</u>. Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estate, and all products and proceeds thereof, whether now existing or hereafter acquired; <u>provided</u> that such liens and security interests shall not prime the Other Senior Liens;

(iv)    <u>Status of the Adequate Protection Claims</u>. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551 or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out, or (ii) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 5(b), subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

6.    <u>Carve Out</u>. For purposes hereof, the "Carve Out" shall mean the following: (i) all statutory fees required to be paid by the Debtors to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code (irrespective of whether the Carve Out Notice (as defined below in this paragraph) has been delivered); (ii) at any time before or on the first business day following delivery by the Administrative Agent to counsel to the Debtors, the U.S. Trustee, and counsel to any Committee of a written notice (the "Carve Out Notice"), which notice may be delivered at any time following the occurrence of the Termination Date or a Termination Event (as defined in paragraph 8 below), stating that the Termination Date has occurred or a Termination Event has occurred, all accrued and unpaid fees, disbursements, costs, and expenses (the "Professional Fees") incurred by professionals or professional firms retained by the Debtors or their estates

pursuant to Bankruptcy Code sections 327, 328, or 363 and any statutory committee (the "Committee") appointed in the Chapter 11 Case pursuant to Bankruptcy Code section 1103 (collectively, the "Professionals") to the extent (and only to the extent) (x) set forth in the approved Interim Budget and (y) allowed or approved by the Court (including on an interim basis); and (iii) the Professional Fees allowed by this Court in an aggregate amount not exceeding $20,000, which Professional Fees are incurred by the Professionals after the first business day following delivery by the Administrative Agent of the Carve Out Notice in accordance with the immediately preceding clause (ii); provided that: (x) the Carve Out shall not be available to pay any Professional Fees incurred by any party, including the Debtors, a trustee, or any Committee or any Professionals engaged thereby, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Administrative Agent or Lenders, it being understood that up to an aggregate of $10,000 shall be made available to any Committee for investigation costs, as described in paragraph 17 below; (y) so long as a Carve Out Notice has not been delivered, the Carve Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court and payable under Bankruptcy Code sections 328, 330 and 331; and (z) without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Interim Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements, or compensation sought by any such Professionals. For the avoidance of doubt, nothing in this Order shall or shall be construed to limit the payment following the delivery of a Carve Out Notice of any of the statutory, Professional Fees or other fees covered by this Carve Out, from cash that is not Cash Collateral.  Notwithstanding anything to the contrary herein, payment following the delivery of a Carve Out Notice of any of the statutory, Professional Fees or other fees covered by this Carve

Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered assets or cash that is not Cash Collateral and second, if there are no remaining unencumbered assets or cash that is not Cash Collateral, from Cash Collateral.  In addition, if a "break up" fee of $250,000 to Cougar Pressure Control, LLC is approved by the Court pursuant to a separate final order, and the Debtor is directed by the Court to make payment of such "break up fee" pursuant to a separate final order, then such "break up fee" of $250,000 payable to Cougar Pressure Control, LLC shall be part of the Carve Out.

      7.    <u>Additional Adequate Protection</u>.  As additional adequate protection:

      a.    <u>Fees and Expenses</u>: The Debtors are authorized and directed to pay, in accordance with this paragraph, on the first Thursday following fifteen (15) days after delivery to the Debtors of a summary invoice describing in summary fashion (redacted for privilege and work product) the tasks and the reasonable and documented fees, costs and expenses incurred or accrued by the Administrative Agent and Lenders, including without limitation, the reasonable fees and documented expenses of legal counsel (including local counsel), financial advisors and other professionals hired by or on behalf of the Administrative Agent or Lenders whether incurred before or after the Petition Date. None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but shall be subject to review as to reasonableness, and any dispute regarding reasonableness shall be decided by the Court), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  Within fifteen (15) days of the submission of a summary invoice, the Debtors shall pay any accrued but unpaid fees of legal counsel (including local counsel), financial advisors and other professionals hired by or on behalf of the Administrative Agent or Lenders through the date of the entry of this Interim Order (whether incurred before or after the Petition Date).

      b.    <u>Other Covenants</u>:  The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first day" order and in depository accounts that shall be maintained at all times at a Lender bank.  The Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Administrative Agent at least five (5) business days prior to the date on which the Debtors seeks the authority of this Court for such use, sale or lease. The Debtors shall comply with the covenants contained in the Credit

Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral.

c.   <u>Reporting</u>:  The Debtors shall comply with the reporting requirements set forth in the Credit Agreement and shall provide the following additional reporting to the Administrative Agent and, subject to appropriate confidentiality provisions, the Committee (if any):

(i)   A rolling 13-week cash forecast for the Debtors provided in MS-Excel, including a budget to actual reconciliation for all line items in the budget, to be provided weekly, by 3:00 p.m. on Thursday of each week commencing with the actual results from the prior week and extending 13 weeks forward, in a form satisfactory to the Administrative Agent; and

(ii)   In addition to, and without limiting, whatever rights to access the Administrative Agent and Lenders have under the Credit Agreement, upon reasonable notice, at reasonable times during normal business hours, and otherwise not to be unreasonably withheld, the Debtors shall permit representatives, advisors, agents, and employees of the Administrative Agent (i) to have access to and inspect the Debtors' property, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors and counsel.

8.   <u>Termination</u>.  The Debtors' right to use the Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "<u>Termination Date</u>") without further notice or court proceeding on the earliest to occur of (i) the date that is thirty (30) days after the Petition Date (unless such period is extended by mutual agreement of the Administrative Agent and the Debtors) if the Final Order has not been entered by this Court on or before such date, and (ii) the occurrence of any of the events set forth in clauses (a) through (r) below (unless waived by the Administrative Agent) (the events set forth in clauses (a) through (r) below are collectively referred to herein as the "<u>Termination Events</u>"):

a.   Failure of the Debtors to make any payment under this Interim Order to the Administrative Agent or Lenders within five (5) business days after such payment becomes due;

b.      Failure of the Debtors to: (i) comply with any material provision of this Interim Order; or (ii) comply with any other covenant or agreement specified in this Interim Order in any material respect and such failure to comply with any such other covenant or agreement shall continue unremedied for five (5) business days following notice by the Administrative Agent, unless otherwise agreed to by the Debtors and Administrative Agent;

c.      The Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Loan Documents;

d.      An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the written consent of the Administrative Agent;

e.      the Debtors file, support, or prosecute a motion seeking, or the Court enters an order approving, a sale of substantially all of the Debtors' assets that does not provide for the distribution to the Administrative Agent (on behalf of the Lenders) at the closing of any such sale, at least the greater of 85% of gross sale proceeds or $8,000,000.

f.      the Bankruptcy Court shall terminate or reduce the period pursuant to Section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

g.      The entry of the Final Order shall not have occurred within 30 days after the Petition Date, or there shall be a breach by the Debtors of any material provisions of the Final Order, or the Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment;

h.      The entry of an order in the Chapter 11 Case charging any of the Prepetition Collateral or Adequate Protection Collateral under Section 552(b) of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code against the Administrative Agent, or the Lenders under which any person

13

takes action against the Prepetition Collateral or Adequate Protection Collateral or that becomes a final non-appealable order, or the commencement of other actions that are materially adverse to the Administrative Agent, or the Lenders or their respective rights and remedies under the Loan Documents in the Chapter 11 Case;

i.   The entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $50,000;

j.   The entry of any post-petition judgment against any Debtor in excess of $50,000;

k.   The payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by the Administrative Agent on behalf of the Lenders, other than as permitted by an order entered in the Chapter 11 Case that is supported, or not objected to, by the Administrative Agent (it being understood that, notwithstanding the entry of any vendor or lien claimant payment order, any payment to potential lien claimants will only be made following the Debtors' provision to the Administrative Agent of information satisfactory to it of such claimant's potential seniority in right of payment);

l.   The existence of any claims or charges, or the entry of any order of the Bankruptcy Court authorizing any claims or charges, other than as permitted under the Interim Order, entitled to super priority under Section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the First Lien Indebtedness, or there shall arise or be granted by the Bankruptcy Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than the Carve-Out), including the 507(b) Claims, or (ii) subject to the Other Senior Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the Loan Documents or in this Interim Order (but only in the event specifically consented to by the Administrative Agent), whichever is in effect;

m.   The Court shall have entered an order dismissing the Chapter 11 Case;

n.   The Court shall have entered an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

o.   The Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the

operation of the businesses in the Chapter 11 Case, unless consented to in writing by the Administrative Agent;

p.  The Court shall have entered an order appointing an examiner in the Chapter 11 Case having expanded powers (beyond those set forth under Sections 1106(a)(3) and (4) of the Bankruptcy Code);

q.  A filing by the Debtors of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the First Lien Indebtedness or asserting any other cause of action against and/or with respect to the First Lien Indebtedness, the Prepetition Collateral securing the First Lien Indebtedness or the Administrative Agent or any of the Lenders (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

r.  The Debtors or any of their subsidiaries, shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against the Administrative Agent or any of the Lenders relating to the First Lien Indebtedness;

9.  <u>Remedies upon the Termination Date</u>.  The Debtors shall promptly provide notice to the Administrative Agent (with a copy to counsel for the Committee and the U.S. Trustee) of the occurrence of any Termination Event. Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable and (b) the Administrative Agent and each Lender, upon seven (7) days written notice to the counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, may (i) setoff amounts in any account of any of the Debtors maintained with the Administrative Agent or such Lender, to the extent necessary for payment of the First Lien Adequate Protection Obligations and (ii) exercise the rights and remedies available under the Loan Documents, or this Interim Order, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations and the automatic stay under Bankruptcy Code section 362 shall be deemed modified and vacated to the extent necessary to permit such actions. In any hearing regarding any exercise of rights or

remedies, the only issues that may be raised by the Debtors in opposition thereto shall be (x)

whether, in fact, the Termination Date shall have occurred and (y) what is the quantum of the

Adequate Protection Obligations, and the Debtors hereby waive any right to seek relief,

including without limitation, under Bankruptcy Code section 105, to the extent such relief would

in any way impair or restrict the rights and remedies of the Administrative Agent and the

Lenders set forth in this Interim Order or the Loan Documents. Any delay or failure of the

Administrative Agent or Lenders to exercise rights under the Loan Documents or this Interim

Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise,

unless any such waiver is pursuant to a written instrument executed in accordance with the terms

of the applicable document. The Administrative Agent shall be entitled to apply the payments or

proceeds of the Prepetition Collateral and the Adequate Protection Collateral in accordance with

the provisions of the Loan Documents and in no event shall the Administrative Agent or Lenders

be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to

any of the Prepetition Collateral, the Adequate Protection Collateral or otherwise.

Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights,

remedies, benefits and protections provided to the Administrative Agent and the Lenders under

this Interim Order shall survive the Termination Date.

10.    <u>Limitation on Charging Expenses against Collateral</u>.  Subject to and effective

upon entry of the Final Order, except to the extent of the Carve Out, no expenses of

administration of the Chapter 11 Case or any future proceeding that may result therefrom,

including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be

charged against or recovered from the Prepetition Collateral or the Adequate Protection

Collateral, the Administrative Agent or the Lenders pursuant to Bankruptcy Code sections 105(a)

or 506(c) or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by the Administrative Agent or Lenders.

11.     <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the Administrative Agent on behalf of the Lenders pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable (subject to paragraphs 13 and 17 of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b).

12.     <u>Bankruptcy Code Section 552(b)</u>. The Administrative Agent and the Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and, subject to entry of the Final Order, the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Administrative Agent and the Lenders; <u>provided</u> that in the event the Final Order does not provide a waiver of the "equities of the case" exception, any non-Debtor party shall have the right to seek to have the Court apply such exception with respect to any cash utilized during the period that does not constitute Cash Collateral (and any party shall have the right to oppose any such request), <u>provided</u> <u>further</u> that the return of such unencumbered cash shall moot any such request.

13.     <u>All Parties' Reservation of Rights</u>.  All parties reserve their rights to argue that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Administrative Agent and Lenders is not allowed under Bankruptcy Code section 506(b) and not allowed on any other basis (including, without limitation, on account of the Debtors' use of

Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the Loan Documents; provided, however, that the Administrative Agent and Lenders reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

14.    Reservation of Rights of the Administrative Agent and Lenders.  Notwithstanding any other provision hereof, the grant of adequate protection to the Administrative Agent and the Lenders pursuant hereto is without prejudice to the right of the Administrative Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Administrative Agent or the Lenders under the Loan Documents, or under equity or law, and the Administrative Agent and the Lenders expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Loan Documents, and/or equity or law in connection with all Termination Events and Defaults and Events of Default (as defined in the Loan Documents, and whether arising prior to or after the Petition Date).

15.    Perfection of Adequate Protection Liens.

a.    The Administrative Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Administrative Agent shall, in its respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order. If the Administrative Agent determines to file or execute any financing statements, agreements, notice of liens or similar

instruments, the Debtors will cooperate and assist in any such execution and/or filings as reasonably requested by the Administrative Agent, and the automatic stay shall be modified to allow such filings.

b. A certified copy of this Interim Order may, in the discretion of the Administrative Agent be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; provided, however, that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this order, and the Debtors shall reimburse the Administrative Agent or their respective designees for the payment of any stamp, intangibles, recording or similar tax.

c. Effective upon entry of the Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for the Debtors to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by the Debtors in accordance with the terms of the Loan Documents or this Interim Order.

16. <u>Preservation of Rights Granted Under this Interim Order.</u>

a. Except as expressly provided in this Interim Order, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Administrative Agent and the Lenders shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 or subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

b. Notwithstanding any order dismissing the Chapter 11 Case under Bankruptcy Code section 1112 or otherwise entered at any time, (x) the 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the

Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

c. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent, of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative Agent, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and (i) the Administrative Agent and the Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in Bankruptcy Code section 363(m) with respect to all uses of the Prepetition Collateral and all Adequate Protection Obligations.

d. Subject to paragraphs 13 and 17 of this Interim Order, the adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Chapter 11 Case or a subsequent chapter 7 case (other than a defense that the payment has actually been made).

e. Except as expressly provided in this Interim Order, the Adequate Protection Obligations, the 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Administrative Agent and the Lenders granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Case or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Interim Order shall continue in the Chapter 11 Case, or in a superseding chapter 7 case under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the Administrative Agent and the Lenders granted by the provisions of this Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

17.     <u>Effect of Stipulations</u>.  As a result of the Debtors' review of the Loan Documents

and the facts relating thereto, the Debtors have admitted, stipulated and agreed to the various

stipulations and admissions contained in this Interim Order, including without limitation, the

stipulations and admissions included in section F, which stipulations and admissions shall be

binding upon the Debtors and any successors thereto in all circumstances. The stipulations and

admissions contained in this Interim Order, including without limitation, in section F of this

Interim Order, shall also be binding upon all other parties in interest, including any Committee or

any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "<u>Trustee</u>") for

all purposes unless (a) such party (subject in all respects to any agreement or applicable law

which may limit or affect such entity's right or ability to do so) has properly filed an adversary

proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to

the limitations contained herein, including, without limitation, in paragraph 18) by no later than

the date that is forty-five (75) days from the date of entry of this Interim Order (or, in the case of

the Committee, thirty (30) days from the date the date of the appointment of the Committee) (the

"<u>Challenge Period</u>") (x) challenging the amount, validity, enforceability, priority or extent of the

First Lien Indebtedness or the liens on the Prepetition Collateral securing the First Lien

Indebtedness, or (y) otherwise asserting any other claims, counterclaims, causes of action,

objections, contests or defenses against the Administrative Agent or the Lenders on behalf of any

Debtor's estate (collectively, the "<u>Claims and Defenses</u>"), and (b) an order is entered by a court

of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff

sustaining any such challenge or claim in any such duly filed adversary proceeding or contested

matter; provided that, as to the Debtors, all such Claims and Defenses are hereby irrevocably

waived and relinquished effective as of the Petition Date. If no such adversary proceeding or

contested matter is timely filed prior to the expiration of the Challenge Period, without further

order of this Court: (w) the Debtors' stipulations and admissions contained in this Interim Order

shall be binding on all parties in interest, including the Committee; (x) the First Lien

Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination,

recharacterization, defense or avoidance, for all purposes in the Chapter 11 Case and any

subsequent chapter 7 case; (y) the Administrative Agent's and Lenders' liens on the Prepetition

Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding,

perfected and of the priority specified in Section L, not subject to defense, counterclaim,

recharacterization, subordination or avoidance; and (z) the First Lien Indebtedness, the

Administrative Agent's and Lenders' liens on the Prepetition Collateral and the Lenders (and

their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or

advisors) shall not be subject to any other or further challenge by the Committee or any other

party in interest, and any such Committee or party in interest shall be enjoined from seeking to

exercise the rights of any Debtor's estate, including without limitation, any successor thereto

(including, without limitation, any estate representative or a Trustee, whether such Trustee is

appointed or elected prior to or following the expiration of the Challenge Period). If any such

adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge

Period, the stipulations and admissions contained in this Interim Order, including without

limitation, in Section L of this Interim Order, shall nonetheless remain binding and preclusive (as

provided in the second sentence of this paragraph) on the Committee and any other person,

including any Trustee, except as to any such findings and admissions that were expressly and

successfully challenged in such adversary proceeding or contested matter. Nothing in this

Interim Order vests or confers on any person, including a Committee or Trustee, standing or

authority to pursue any cause of action belonging to the Debtors or their estates. In the event that there is a timely successful challenge brought pursuant to this paragraph 17, the Court shall retain jurisdiction to fashion an appropriate remedy.

18.    <u>Limitation on Use of Collateral</u>.   The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in this Interim Order. Notwithstanding anything herein or in any other order of this Court to the contrary, no Prepetition Collateral or the Carve Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Loan Documents, or the liens or claims granted under this Interim Order, or the Loan Documents; (b) assert any Claims and Defenses against the Administrative Agent or the Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Administrative Agent and the Lenders hereunder, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court without objection from the Administrative Agent, <u>provided</u> that, notwithstanding anything to the contrary herein, no more than $15,000 of the Prepetition Collateral or the Carve Out in the aggregate may be used by any Committee to investigate the validity, enforceability or priority of the First Lien Indebtedness or the liens on the Prepetition Collateral or investigate any Claims and Defenses or other causes of action against the Administrative Agent or any of the Lenders; <u>provided</u>, <u>however</u>, that there shall be no such limit on use of cash that is not Cash Collateral with respect to the foregoing.

19.    <u>Binding Effect; Successors and Assigns</u>. The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including without limitation, the Administrative Agent and the Lenders, any Committee and the

Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any Debtor) and shall inure to the benefit of the Administrative Agent, the Lenders and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Interim Order, the Administrative Agent and the Lenders shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estates of the Debtors. For all adequate protection and stay relief purposes throughout the Debtors' Chapter 11 Cases, the Administrative Agent and the Lenders shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

20.    Limitation of Liability.  In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, subject to entry of the Final Order, the Administrative Agent and the Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon Administrative Agent or the Lenders of any liability for any claims arising from the prepetition or postpetition activities of the Debtors and their respective affiliates (as defined in Bankruptcy Code section 101(2)).

Case 15-60796   Doc 8-2   Filed 11/24/15   Entered 11/24/15 15:27:25   Desc Proposed
Order    Page 25 of 27

21.    <u>No Impact on Certain Contracts/Transactions</u>.   No rights of any person under Bankruptcy Code sections 555, 556, 559, 560 and 561 shall be affected by the entry of this Interim Order as to any contract or transaction of the kind listed in such Bankruptcy Code sections.

22.    <u>Affirmation of Liens</u>. The Debtors are hereby authorized and deemed to ratify, reaffirm and adopt the Loan Documents, including the validity, extent, priority, perfection and enforceability of the liens, liabilities, and obligations to the Administrative Agent and Lenders incurred thereunder and the liens, security interests and mortgages granted to the Administrative Agent and Lenders thereunder.  The validity, extent, priority, perfection and enforceability of the Administrative Agent's, and Lenders' prepetition claims, liens, mortgages and security interests in the Debtors' assets shall not be subject to invalidation, avoidance, subordination, or other challenge by the Debtors, and in furtherance thereof the Debtors hereby releases, waives and affirmatively agrees not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that they may have to contest (a) any Defaults or Events of Default (as such terms, or similar terms are defined in the Loan Documents) that were or could have been declared by the Administrative Agent, or the Lenders as of the Petition Date and (b) the amount of the Debtors' indebtedness to the Administrative Agent, or the Lenders as of the Petition Date.

23.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

Case 15-60796   Doc 8-2   Filed 11/24/15   Entered 11/24/15 15:27:25   Desc Proposed
Order    Page 26 of 27

24.     <u>Proofs of Claim</u>.   Neither the Administrative Agent nor the Lenders will be required to file proofs of claim in the Chapter 11 Case or a successor case, and the Debtors' stipulations in Section L herein shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in the Chapter 11 Case or a successor case shall not apply to the Administrative Agent or the Lenders with respect to the First Lien Indebtedness. Notwithstanding the foregoing, Administrative Agent, on behalf of itself and the Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Case for any claim allowed herein.

25.     <u>Final Hearing</u>.   The Final Hearing on the Motion is scheduled for [•], at [•] before this Court.  The Debtors shall promptly mail copies of this Interim Order to the parties having been given notice of the Interim Hearing and to any other party which has filed a request for notices with this Court.  Any party in interest objecting to the relief sought at the Final Hearing shall submit any such objection in writing and file same with the Court (with a courtesy copy to Chambers) and serve such objection on the following parties so as to be received no later than 5:00 p.m. (Central Time) on _____: (i) the Debtors;  (ii) counsel to the Debtors; (iii) counsel for each of the Lenders, (iv) to the assistant U.S. Trustee assigned to this case at the Office of the U.S. Trustee for the Eastern District of Texas; (v) any party entering an appearance in the case and requesting notice, and (vi) any counsel that has filed an application to be employed by a Committee.

26.     <u>Jurisdiction</u>.   This Court shall retain jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

27.     <u>Controlling Effect of Interim Order</u>.   To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

IT IS SO ORDERED.


DATED this _____ day of November, 2015.


_____
UNITED STATES BANKRUPTCY JUDGE