IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TORQUED-UP ENERGY SERVICES, INC. | § | Case No. 15-60796-11 |
| | § | |
| ARCTIC ACQUISITION CORPORATION D/B/A COUGAR PRESSURE CONTROL | § | Case No. 15-60798-11 |
| | § | |
| TORQUED-UP ENTERPRISES, LLC | § | Case No. 15-60799-11 |
| DEBTORS | § | |

**DEBTOR'S MOTION FOR ORDER (I) APPROVING PROCEDURES FOR THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (II) SCHEDULING an AUCTION AND HEARING ON THE SALE MOTION**

TO THE HONORABLE BILL PARKER, UNITED STATES BANKRUPTCY JUDGE:

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON DEBTORS' COUNSEL; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED. NOTWITHSTANDING THE FOREGOING, DEBTORS MAY SEEK RELIEF FROM THE COURT REQUESTING RELIEF ON SHORTENED NOTICE.**

COMES NOW , (the "Debtors"), debtors and debtors-in-possession in the above-captioned bankruptcy case ("Bankruptcy Case"), and files this Motion for Order (i) Approving Procedures for the Sale of Certain Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances and (ii) Scheduling the Auction and Hearing on the Sale Motion ("Motion") and in support thereof respectfully show the following:

1

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. INTRODUCTION

2. Debtors have been actively seeking purchasers for their assets, either separately or in their entirety for more than a year prior to filing. To that end, Debtors engaged Simmons & Company International, an investment banking firm which focuses on oilfield services companies, to contact many prospective buyers to purchase all of the assets of the Debtors as an ongoing business. In addition, Debtors listed surplus assets for sale with Kruse Asset Management, Inc., which specializes in selling oilfield services equipment, to sell specific pieces of equipment. Torqued-Up Energy Services, Inc. signed a Letter of Intent dated November 10, 2015 with Commander Energy Services, Inc. to purchase substantially all of Debtors' operating assets and ancillary equipment. Debtors subsequently signed a definitive Asset Purchase Agreement dated November 23, 2015 (the "Definitive Purchase Agreement") with Cougar Pressure Control, LLC ("Cougar"), an affiliate of Commander Energy Services, Inc., to purchase substantially all of Debtors' operating assets and ancillary equipment. A copy of that Definitive Purchase Agreement is attached as **Exhibit 1**.

3. This forum has an available mechanism under Section 363 to further market the Debtors' assets and provide creditors with the opportunity to share in any value that may exist outside of the secured indebtedness and participate in bidding for assets if they so choose.

4. Accordingly, the Debtors are by this motion also seeking authority to sell the primary assets of this estate free and clear of all liens, claims, interests and encumbrances and to assume and assign certain executory contracts to the highest bidder or bidders pursuant to a duly noticed and court approved auction pursuant to 11 U.S.C. §§ 363 and 365. In order to effectuate the sale of such assets, the Debtors are requesting that the Court approve a sale and bid process for an open auction, with advertising and notice procedures, in the form attached hereto as **Exhibit "2"** (the "Sale Procedures") that will, among other things, provide qualified potential purchasers with the opportunity to competitively bid on the assets.

5. The assets to be sold consist of substantially all of the Debtors' tangible operating and ancillary assets but does not include actions for recovery under Chapter 5 of the Bankruptcy Code (the "Assets"). The Debtors also propose to assume and assign their interest in any executory contracts or unexpired leases held by the estates that the prevailing party at the auction requires as part of the acquisition, and the Sale Procedures account for these issues as well. Generally, the assets sought to be sold and executory contracts available are described in the Definitive Purchase Agreement and as described in the attached **Exhibit 1**.

6. Promptly after completion of the court approved auction (the "Auction"), the Debtors will present the highest and best bid (the "Prevailing Bid") along with the runner-up bid (the "Runner-Up Bid") for the Assets to the Court for approval at the hearing on the Sale Motion (the "Sale Hearing").

### III. BACKGROUND

7. On November 24, 2015, Debtors filed their voluntary petition with this Court under Chapter 11 of 11 U.S.C. §§101 *et seq*. (the "Bankruptcy Code"). (A request to administratively consolidate the cases is pending.)

3

8. The Debtors' Assets are encumbered by priority liens in favor of Amegy Bank National Association and Wells Fargo *Bank,* N.A. (the "Lenders").

9. The Debtors accordingly believe that it is in the best interests of their estates and all creditors to establish sale procedures that will maximize the value of the Assets, but allow a prompt sale process to reduce the continuing administrative expenses.

## IV.

## REQUEST FOR APPROVAL OF SALE PROCEDURES

**A.    PROPOSED SALE PROCEDURES**

The Debtors request that the Court authorize the sale of the Assets at a public auction (the "Auction") conducted pursuant to the proposed Sale Procedures attached hereto as **Exhibit "2"** which, supplemented by the order approving this motion ("Sale Procedures Order"), will generally provide for the following:[1]

1. Bidder Qualifications: Only qualified bidders (each a "Qualified Bidder") may submit bids for the Assets and participate in the Auction. To become a Qualified Bidder and participate in the Auction, the potential bidder must satisfy the criteria identified in the attached Sale Procedures. Cougar has been accepted by the Debtors as a Qualified Bidder and may participate in the Auction.

2. Marketing and Due Diligence: Extensive marketing by the Debtors has been performed by Debtors for over a year prior to filing. The Debtors will provide as much notice as reasonably possible under the circumstances to all known creditors and parties in interest and all other known parties who may have an interest in acquiring the Assets but are of the opinion

---

[1] This section of the Motion provides only a summary of the Sale Procedures. Creditors, parties-in-interest and prospective purchasers are directed to review the complete Sale Procedures set forth on Exhibit 2 hereto along with all other accompanying orders and notices to be provided by the Debtors in connection with the sale of the Assets.

4

that no degree of additional marketing will result in any "new" prospective bidders beyond those already known to Debtors. Debtors have in the past utilized the services of Simmons & Company International to assist in the process and are seeking approval of the Court to do so post-petition. To assist potential bidders in their evaluation of the Assets, the Debtors (and any marketing company approved by the Court) will provide such parties with informational materials and access to the Assets provided that the interested parties execute a confidentiality agreement in a form and substance satisfactory to the Debtors.

3. <u>Auction Deposits</u>. As part of the requirements to become a Qualified Bidder, all bidders must tender a deposit in the amount of $100,000.00 ("<u>Auction Deposit</u>") along with their written opening bid. Cougar has made such a deposit. The Auction Deposit must be in the form of (a) a cashiers or certified check payable to the Debtors, or (b) funds received by the Debtors by wire transfer. The Auction Deposit must be received by the Debtors at least three (3) business days prior to the Auction, unless other arrangements have been approved by the Debtors and Lenders.

4. <u>Notice of Auction and Sale Hearing</u>: At the hearing on this Motion, the Debtors will request the Court to approve and schedule a date and time for the Auction and the Sale Hearing and authorize the Debtors to proceed with the sale of the Assets pursuant to that schedule, or as continued from time to time as announced to the Qualified Bidders and the Court. As set forth in the attached Sale Procedures, the Debtors are requesting approval no later than January 22, 2016, at 10:00 a.m. at the offices of Torqued-Up Energy Services, Inc., 110 N. College Avenue, Suite 1000, Tyler, Texas 75702, as the date, time and location of the Auction. Debtors are also requesting that the Sale Hearing be scheduled as soon as possible thereafter by the Court, to approve a sale to the Successful Bidder. Debtors will propose a

                                Document         Page 6 of 14

separate Sales Order which incorporates and approves the terms of an Definitive Purchase Agreement substantially in the form of **Exhibit 1** attached hereto.

5. As soon as reasonably practicable after the entry of the Sale Procedures Order, and except as provided therein, the Debtors will serve a copy of the Sale Procedures Order with attached Sale Procedures to all known creditors and parties-in-interest in accordance with Bankruptcy Rules 2002(a)(2), (c)(1) and 6004, which will include (i) any party asserting an interest in the Assets, (ii) known creditors and other parties-in-interest in this case as identified on the mailing matrix attached hereto, and (iii) the United States Trustee for the Eastern District of Texas.

6. After the Auction is completed and closed, the Prevailing Bid and Runner-Up Bid will be presented to the Court for approval at the Sale Hearing, which Debtor requests to be set at the earliest possible date following the Sale Hearing.

7. <u>Closing</u>. The closing with the Prevailing Bidder will be consummated pursuant to the order approving the Sale Motion and an agreement in form and substance acceptable to the Debtors and Lenders. The Runner-Up Bid shall remain open, irrevocable and unconditional until the transaction is closed, so that if the holder of the Prevailing Bid fails to close, the holder of the Runner-Up Bid shall be required to close.

8. The Lenders support the Sale Procedures described herein, provided that (i) the Debtors only file, support, or prosecute a motion that seeks a sale of substantially all of the Debtors' assets that provides for the distribution to the Administrative Agent (on behalf of the Lenders) at the closing of any such sale, at least the greater of 85% of gross sale proceeds or $8,000,000, and (ii) any proposed sale order or any order entered by the Court provides for the distribution to the Administrative Agent (on behalf of the Lenders) at the closing of any such sale,

at least the greater of 85% gross sale proceeds or $8,000,000.  The Lenders reserve the right to object to any sale that fails to meet the foregoing conditions (i) or (ii).

9. **PROCEDURE FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND THE FILING OF CURE CLAIM STATEMENTS**

1. The Debtors propose to assume and assign executory contracts and unexpired leases which a purchaser of the Assets may designate as part of its bid ("Contracts"). Information regarding executory contracts and unexpired leases will be provided to any bidder that executes a Confidentiality Agreement and performs due diligence.

2. The Prevailing Bidder will be responsible for all future obligations arising under or related to the Contracts which are assumed pursuant to Section 365(b)(1) of the Bankruptcy Code ("Assumed Liabilities"). If, and to the extent, any defaults currently exist under the Contracts that are selected by the Prevailing Bidder for assumption and assignment, then the Prevailing Bidder will also be required to cure such defaults pursuant to Section 365 and as ordered by the Court or otherwise agreed upon by the parties to such Contracts. Accordingly, it is reasonable and appropriate under the circumstances to compel parties to the Contracts to identify and provide evidence of any existing defaults to allow the Debtor, Lenders and any potential purchaser of the Assets to fairly evaluate the merits of competing bids and the relative financial commitments associated therewith. To facilitate this aspect of the sale process, the Debtors request that the Court establish within the Sale Procedures a proof of claim deadline and related filing procedures for all parties to the Contracts.

3. The Debtors propose that the Court require all counterparties to a Contract, who assert or may assert a claim based upon existing defaults under such Contract, to provide evidence of any and all claims as part of this sale process or be forever barred from asserting

such claims against the Debtors and its estate, the holders of the Prevailing Bid and Runner-Up Bid or any other party involved in the sale process, including, without limitation, the Lenders.

4. In order to provide a fair opportunity to evaluate and respond to the claims, the Debtors believe that such parties should be required to provide evidence of their claims in their Cure Claim Objection, if any, by the Cure Claim Deadline (with a copy to counsel for the Debtors and Lenders) identifying (i) the contract, and attaching a copy of such contract, and (ii) the alleged monetary and non-monetary defaults. In that regard, the Debtors request an order from the Court that any creditor asserting a default under a Contract who does not file a Cure Claim Statement on or before the Cure Claim Deadline shall have waived all defaults as a condition to assumption and assignment of such contract and shall further be barred from asserting such claim against the Debtors and its estate, the holders of the Prevailing Bid and Runner-Up Bid and any other party involved in this sales process.

## V.

## STALKING HORSE

1. As set out above, Cougar has executed the Definitive Purchase Agreement to purchase Debtor's Assets which is attached hereto as **Exhibit "1"**.

2. The Definitive Purchase Agreement requests that Cougar be granted a "breakup fee" of $250,000.00, in connection with being the stalking horse bidder in the event Cougar is not the successful holder of the Prevailing Bid and the Debtors close a sale of the Assets with a third party.

3. Debtors seek approval of the terms and conditions of the Definitive Purchase Agreement attached as **Exhibit 1** including but not limited to the requested breakup fee.

VI.

## THE BIDDING PROCEDURES ARE REASONABLE
## AND APPROPRIATE UNDER THE CIRCUMSTANCES

1. This Court may authorize the sale of the Assets pursuant to Section 363(b)(1) of the Bankruptcy Code. The sale of the assets which are the subject of this Motion and which sale is outside the ordinary course of business may be approved by a bankruptcy court when: (i) there is a sound business reason for the sale; (ii) accurate and reasonable notice is provided to interested parties; (iii) the price is fair, reasonable and adequate; and (iv) the sale is made to the purchaser in good faith. *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *see also In re Stroud Ford, Inc.*, 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993); *In re Titusville Country Club,* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.,* 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

2. Courts have made clear that a Debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that procedures that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid") (affirming *Integrated Resources*, 135 B.R. 746 (Bankr. S.D.N.Y. 1992)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr. *S.D.N.Y. 1989).*

3. *The* paramount goal in any proposed sale of *property of the* estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.,* 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to

enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the Debtor's duty with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate.") (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).

4. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy sales. *See, e.g., Integrated Resources*, 347 B.R. at 659 (such procedures "encourage bidding and maximize the value of the debtor's assets"); *In re Financial News Network Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and . . . provide for a fair and efficient resolution of bankrupt estates"), *appeal dismissed*, 931 F.2d 217 (2d Cir. 1991).

5. Here, the proposed procedures for the sale and the assumption and assignment of executory contracts are reasonable, appropriate, and within the Debtors' sound business judgment under the circumstances because they will serve to maximize the value that the Debtors will recover on account of the sale of the Assets. As noted above, the value of the Assets will be determined at the Auction to be conducted under the Sale Procedures, and the Sale Procedures are designed to ensure a competitive and fair bidding process under the circumstances.

6. Accordingly, the proposed Sale Procedures are reasonable and appropriate under the circumstances.

## VII.

## REQUEST FOR APPROVAL OF NOTICE AND
## SCHEDULING OF AUCTION AND HEARING ON SALE MOTION

1. The Debtors have served, by first class United States Mail, postage prepaid, a copy of this Sale Procedures Motion on (i) any party asserting an interest in the Assets, (ii) all known creditors and other parties-in-interest in this case identified on the mailing matrix attached hereto, and (iii) the United States Trustee for the Eastern District of Texas. Additionally, subject to approval of the Court, the Debtors will serve a copy of the Sale Procedures and Sale Procedures Order within two (2) business days of the entry of the Sale Procedures Order. The Debtors request that such notice be deemed proper and sufficient under the circumstances for purposes of Bankruptcy Rules 2002 and 6004.

2. Based on the foregoing notice, the Debtors therefore request that the Court approve the date, time and location of the Auction as set forth in the proposed Sale Procedures attached hereto as **Exhibit "2"**. The Debtors believe in its business judgment that such notice is sufficient under the circumstances to assure a commercially reasonable sale of the Assets, particularly given its past efforts and the current state of the oil and gas industry.

3. Promptly following completion of the Auction, the Debtors will request that the Court approve the sale of the Assets to the holder of the Prevailing Bid at the Auction. The Debtors request that the Court accordingly schedule the hearing on the Sale Motion at the Court's first available date following the auction, to approve the Prevailing Bid and Runner-Up Bid and authorize the Debtors to sell the Assets. Debtors are requesting the date of _____, 201__. Service of the Sale Procedures Order containing the date and time of such

hearing provides creditors and parties in interest notice of the sale of the Assets which is sufficient under the circumstances.

4.    The Debtors further request that the Court require that any objection to the Auction and/or sale of the Assets be in writing, set forth the name of the objector, the nature and amount of the objector's claims against the Debtors and its estate or interest in the Assets, and the basis for the objection, and be filed with the Bankruptcy Court and served upon the United States Trustee and counsel for the Debtors and the Lenders by no later than three (3) days prior to the date set for the Auction.

## VIII. RELIEF REQUESTED

1.    By this Motion, the Debtors seek (a) entry of an order (the "Bid Procedures Order") (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale of the Debtors' assets, (ii) scheduling a bid deadline, auction date, and sale hearing date as follows:

- Bid Deadline: January 18, 2016, at 4:00 p.m. Central Time as the last date by which any Potential Purchaser may deliver its Bid by email to counsel for the Debtors.

- Auction Date: January, 2016, at 10:00 a.m. Central Time as the date and time that the Auction, if one is needed, will be held at the offices of Torqued-Up Energy Services, Inc., 110 N. College Avenue, Suite 1000, Tyler, Texas 75702, or at another location as may be timely disclosed by the Sellers to Qualified Bidders.

- Sale Hearing: _____, 201_, at 1:30 p.m., as the date and time that the Court will consider approval of the Sale.

and (iii) approving form and notice thereof. The Debtors submit that the Bidding Procedures will permit interested parties reasonable opportunities to evaluate whether to propose a bid for the Assets that is higher and better in value to the Debtors' estates than the proposed Purchase Price submitted by the Proposed Purchaser. In addition, the Debtors seek, at the conclusion of the Sale Hearing (defined below), entry of an order (a) authorizing the sale of the Debtors' property to the

Proposed Purchaser, or such other person or entity that is the Successful Bidder (defined below), with such sale being free and clear of all liens, claims, and encumbrances, (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder, and (c) granting certain related relief (the "Sale Order").

### IX. CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) approving the Sale Procedures with respect to the Assets being sold; (ii) finding that the marketing and advertising for the sale of the Assets is sufficient and that notice is reasonable and appropriate, (iii) scheduling the Auction and the hearing on the Sale Motion, (iv) establishing a deadline by which objections to the Bidding Procedures must be filed and served; (v) approving the Definitive Purchase Agreement; (vi) establishing a deadline by which any objections to the Sale to the Prevailing Bidder must be filed and served; and (vii) granting such other and further relief to which the Debtors may be justly entitled.

Date: November 24, 2015          Respectfully submitted,

**IRELAND, CARROLL & KELLEY, P.C.**

*/s/ Patrick Kelley*
Patrick Kelley
State Bar No. 11202500
6101 South Broadway, Suite 500
Tyler, Texas 75703
Tel. (903) 561-1600
Fax (903) 581-1071

**SEARCY & SEARCY, P.C.**

Jason R. Searcy, State Bar 17953500
Joshua P. Searcy, State Bar 24053468
Callan C. Searcy, State Bar 24075523

> P.O. Box 3929
> Longview, Texas 75606
> (903) 757-3399 Telephone
> (903) 757-9559 Facsimile
>
> ATTORNEYS FOR DEBTORS

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that true and correct copy of the above and foregoing was mailed, first class mail, postage prepaid, to each person on the attached Master Service List and was sent via electronic notice pursuant to the ECF filing system to each person requesting such notice on this the 24th day of November, 2015.

> /s/ Patrick Kelley
> Patrick Kelley

22751422v.2